FILED

2011 Sep-21  PM 03:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMIKA LASHAY WALTON, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:10-CV-1078-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Tamika Lashay Walton, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Walton timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Walton was twenty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a ninth grade

education.  (Tr. at 17.)  Her past work experiences include employment as a housekeeper in a local hospital and hotel.  (*Id*.)  Ms. Walton claims that she became disabled on March 6, 2007, due to systemic lupus erythematosus, dysthymia, obesity, fibromyalgia, and lumbar problems. (Tr. at 21.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the

analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise,

the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment

listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§

404.1520(a)(4)(iii),  416.920(a)(4)(iii).  If the claimant's impairments fall

within this category, he or she will be found disabled without further

consideration.  *Id.*  If they do not, a determination on the claimant's

residual functional capacity ("RFC") will be made and the analysis proceeds

to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's

impairments prevent him or her from returning to past relevant work.  20

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do

his or her past relevant work, the claimant is not disabled and the

evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the

analysis proceeds to the fifth step.  *Id.*  Step five requires the court to

consider the claimant's RFC, as well as the claimant's age, education, and

past work experience in order to determine if he or she can do other work.

20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other

work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Walton "meets the insured status requirements of the Social Security Act through June 30, 2007." (Tr. at 18.)  He further determined that Ms. Walton has not engaged in substantial gainful activity since the amended alleged onset of her disability. (*Id.*)  According to the ALJ, Ms. Walton's systematic lupus erythematosus ("SLE"), dysthymia, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.*)  He considered her fibromyalgia and lumbar problems, but did not find them to be severe impairments. (Tr. at 21.)   He also found that her severe impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*)  The ALJ did not find Ms. Walton's allegations to be totally credible, and he determined that she has the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following exceptions: she must rotate positions frequently, she can do only occasional climbing, she must work in a temperature controlled environment, she must perform simple tasks only, she must have limited public contact, and no

exposure to industrial hazards. (Tr. at 23.)

According to the ALJ, Ms. Walton is unable to perform any of her past relevant work, she is a "younger individual," and she has a "limited education," as those terms are defined by the 20 C.F.R. §§ 404.1564 and 416.964.  (Tr. at 25.)  He determined that "[t]ransferability of job skills is not an issue in this case because [Ms. Walton's] past relevant work is unskilled."  (*Id.*)  The ALJ found that Ms. Walton's age, education, work experience, and residual functional capacity allow her to perform a significant number of jobs such as marker of Semi Conductor Wafers, mail clerk, and packager of small parts.  (Tr. at 26.)  The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 6, 2007 through the date of this decision."  (Tr. at 27.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal

standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622,

624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards
is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.
1984).

III.    Discussion.

Ms. Walton alleges that the ALJ's decision should be reversed and
remanded because the ALJ erred by finding that the plaintiff's fibromyalgia
was not severe. Plaintiff contends that in so finding, the ALJ improperly
substituted his own judgment for that of the plaintiff's treating source.

In making his determination that Platiniff's fibromyalgia is not
"severe", the ALJ based his decision on (1) inconsistent diagnoses by the
plaintiff's treating physician and a rheumatologist, (2) the treatment
prescribed by Plaintiff's treating physician, and (3) the impairment's impact
on the claimant's ability to perform work activities. (Tr at 21.)

A.    Inconsistent Diagnoses

The ALJ first weighed whether the record contained a convincing and
consistent diagnosis of fibromyalgia. (Tr. at 21.)   In November 2005, Dr.
Amy Theos diagnosed the plaintiff with probable discoid lupus. (Tr. at 232.)

Plaintiff began seeing Dr. Walter Chatham, a rheumatologist[1], in September 2006. (Tr. at 239.)  During her initial visit, the plaintiff was asked to respond to a questionnaire in which she indicated her pain levels during various daily activities.  (Tr. at 243.)  Based, in part, on these subjective descriptions of pain, Dr. Chatham did not diagnose fibromyalgia, but instead began treating the plaintiff for systematic lupus erythematosus. (Tr. at 239.)  Plaintiff saw Dr. Chatham again in May 2006 (Tr. at 244), August 2007 (Tr. at 366), and October 2008 (Tr. at 362).  In 2007, Dr. Chatham found the plaintiff to be generally stable, with normal cervical rotation, full range of motion in all extremities, full 5/5 strength, and stable gait.  (Tr. at 365.)  In 2008, Dr. Chatham noted the plaintiff had stable lupus, normal cervical rotation, and normal gait and stance. (Tr. at 362-64.) At no time did Dr. Chatham diagnose or mention fibromyalgia in her medical records.

The only diagnosis of fibromyalgia comes from Dr. Emmanuel Odi, the plaintiff's treating physician, whom she saw consistently from November

---

[1]Symptomatic patients are recommended to see a rheumatologist who is familiar with the diagnosis and treatment of fibromyalgia because not all doctors are trained to recognize this impairment.  Arthritis Foundation & American College of Rheumatology, Arthritis Information - Fibromyalgia (1992).  *See*  20 C.F.R. § 404.1527(d)(5).

2007 through June 2009. (Tr. at 312-17, 367-69.)    In his 2009 Physical Capacities Evaluation, Dr. Odi determined that, during an eight hour work day, the Plaintiff could lift no more than ten pounds, sit no more than three hours, and stand or walk for no more than one hour.  (Tr. at 333.)  Also, in his Pain/Fatigue forms Dr. Odi described the Plaintiff as experiencing "virtually incapacitating" pain and that fatigue/weakness is present "to such an extent that bedrest/medication is necessary."  (Tr. at 334-36.)

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  "[G]ood cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)

(holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

In this case, Dr. Odi's own records do not support the opinions given in his Physical Capacities Evaluation. A routine visit with Dr. Odi early in 2008 showed no abnormal complaints of pain, but he diagnosed her with "uncontrolled" fibromyalgia and depression. (Tr. at 315.) In November 2008, the Plaintiff complained of pain in her hands and feet, leading to an increase in medication due to her no longer being pregnant. (Tr. at 312.) Four months later, a routine visit to Dr. Odi showed no significant findings in the Plaintiff's physical exam, and she even reported that exercising twice a week was helping. (Tr. at 369.) In May 2009, Dr. Odi found the Plaintiff had tender and swollen joints, but he did not increase her medication. (Tr. at 368.) Two months later at a routine check-up, the Plaintiff claimed the medication was helping, and that she was attempting to go to school, but the prolonged sitting caused her pain. (Tr. at 367.)

Although Dr. Odi diagnosed fibromyalgia, the ALJ determined that good cause existed to give this diagnosis little weight. (Tr. at 24.) In making his determination, the ALJ noted that the diagnosis of fibromyalgia was

inconsistent among the plaintiff's physicians. (Tr. at 21.)  The ALJ also observed that the rheumatologist, whose expertise in the field is greater than that of a general practitioner, did not at any time mention fibromyalgia, despite seeing the plaintiff four times in two years. (Tr. at 21.)  These inconsistencies in diagnoses support the ALJ's decision to discount Dr. Odi's opinion. Further, the ALJ properly gave little weight to the 2009 Physical Capacities Evaluation completed by Dr. Odi, as it was inconsistent with the doctor's own record and devoid of any explanation, rationale, clinical findings, or reference to objective testing.[2] (Tr. at 24.)

     B.    Treatment Prescribed

The ALJ next looked at whether the plaintiff received treatment at a rate of frequency or with the types of tests and labs normally seen for patients with fibromyalgia in his determination of whether the plaintiff's fibromyalgia is a severe impairment. (Tr. at 21.)

---

[2]The plaintiff contends that the ALJ wrongfully substituted his opinion for that of her primary care physician.  (Doc. 8 at 10.) Specifically, the plaintiff takes issue with the ALJ's statement that the Plaintiff "is not receiving treatment at a rate of frequency or with the types of tests and labs normally seen for patients with fibromyalgia." (*Id.* at 12 (quoting Tr. at 21).) However, the record shows that the ALJ did not substitute his own opinion; rather, he found that the treating physician's opinion was inconsistent with the rheumatologist, inconsistent with the doctor's own medical records, and conclusory in nature.

The record shows that Dr. Odi was able to successfully control the plaintiff's pain with exercise and medication.   As discussed above, throughout 2009, the Plaintiff's medications did not change, and she indicated that they provided control over her condition.  (Tr. at 367-69.) The ALJ found the record shows only a modest amount of pain medication (Tr. at 190-93), indicating conservative treatment for a patient with alleged "virtually incapacitating pain" and fibromyalgia. (Tr. at 22.) *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that only moderate uses of pain medication did not support the severe limitations described by the claimant).

Therefore, the ALJ's finding that the plaintiff's treatment history indicates her fibromyalgia was not a severe impairment is supported by substantial evidence.

C.     Daily Activities

Finally, the ALJ examined whether Plaintiff's claimed fibromyalgia impacted her ability to perform work activities. (Tr. at 21.)  In making this determination, the ALJ considered the plaintiff's daily activities. (*Id.*)  "An impairment or combination of impairments is not severe if it does not

significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  In *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), the court held that an impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 920.  Thus, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  The claimant bears the burden of demonstrating the existence of such a disability.  *See Carnes v. Sullivan*, 963 F. 2d 1215, 1218 (11th Cir. 1991). The Eleventh Circuit has held that while treating physicians' opinions can be particularly valuable in fibromyalgia cases, where there can be a lack of objective evidence, the ALJ may base a negative credibility determination on "inconsistencies between the claimant's descriptions of her diverse daily activities and of her claims of infirmity." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The Plaintiff's testimony regarding her daily activities is inconsistent with the significant limitations claimed.  The ALJ found only mild limitations on her daily life because she "essentially lives independently." (Tr. at 22.) Plaintiff holds a driver's license, visits her boyfriend, does the laundry, makes her bed, and shops for clothes on a regular basis.  (*Id*.)

The 2007 evaluation by psychologist Dr. Beidlman also supports the ALJ's determination that Plaintiff's fibromyalgia was not severe.  Dr. Beidelman found the Plaintiff mentally sound and noted Plaintiff "does not identify severe functional limitations, but notes that lupus causes problems." (Tr. at 287.)  Dr. Beidelman added that Plaintiff can "take care of her kids, clean and cook," and go to church. (*Id*.)  It is significant that the plaintiff did not attribute any problems or functional limitations to her fibromyalgia.

In evaluating the plaintiff's daily activities, the ALJ found that even if the fibromyalgia diagnosis is correct, it causes only minimal functional limitations. (Tr. at 21.)  He further found that the claimant's activities of daily living are simply not suggestive of disability. (Tr. at 25.) Substantial

evidence exists to support the ALJ's finding that the plaintiff is able to perform work activities and her fibromyalgia is not a severe impairment.

 IV.   Conclusion.

Upon review of the administrative record, and considering all of Ms. Walton's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 21st day of September 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458